IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

BOOSTED LLC, a Colorado limited liability company, d/b/a BOOSTED E-JUICE d/b/a BOOSTED d/b/a LIVE BOOSTED, a corporation,
and CORY VIGIL, individually.

        Defendants.

---

## COMPLAINT FOR PERMANENT INJUNCTION

---

Plaintiff, the United States of America, by its undersigned counsel, and on behalf of the United States Food and Drug Administration (FDA), respectfully represents to this Court as follows:

1. This statutory injunction proceeding is brought under the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), to permanently enjoin Boosted LLC d/b/a Boosted E-Juice, d/b/a Boosted, and d/b/a Live Boosted ("Boosted LLC" or the "firm"), a limited liability company, and Cory Vigil, individual (collectively, "Defendants"), from violating 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce tobacco products, within the meaning of 21 U.S.C. § 321(rr), that are adulterated and misbranded.

**Jurisdiction and Venue**

2. This Court has jurisdiction over the subject matter and all parties to this action under 28 U.S.C. §§ 1331, 1337, and 1345, and 21 U.S.C. § 332(a), and personal jurisdiction over all parties.

3. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c).

**Defendants**

4. Defendant Boosted LLC is a Colorado limited liability company located at 455 W Wesley Avenue, Denver, CO 80223, within the jurisdiction of this Court.

5. Boosted LLC sells finished electronic nicotine delivery systems (ENDS) products, specifically "Boosted" e-liquid products, from its website, https://www.boostedejuice.com (the "website" or "Defendants' website").

6. Defendant Cory Vigil is an owner of Boosted LLC and the most responsible person at the firm.

**Defendants' Operations**

7. Defendants manufacture finished ENDS products, including finished e-liquids. Defendants operate the website through which customers may purchase Boosted LLC's ENDS products. When a customer purchases Defendants' ENDS products through the website, Defendants ships the products from Colorado directly to customers.

8. Defendants' ENDS products are intended for personal consumption.

**Defendants' ENDS Products Are Adulterated and Misbranded**

9.      Defendants violate the Act by introducing or delivering for introduction into interstate commerce adulterated and misbranded tobacco products.  21 U.S.C. § 331(a).

*Defendants' ENDS Products Are Tobacco Products*

10.     The Act defines "tobacco product" at 21 U.S.C. § 321(rr) to include "any product made or derived from tobacco, or containing nicotine from any source, that is intended for human consumption, including any component, part, or accessory of a tobacco product."  A "tobacco product" within the meaning of 21 U.S.C. § 321(rr) is generally subject to the requirements in 21 U.S.C. Chapter 9, Subchapter IX.  *See* 21 U.S.C. § 387a(b) (providing that such subchapter shall apply to "all cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco and to any other tobacco products that [FDA] by regulation deems to be subject to this subchapter."); 81 Fed. Reg. 28974, 28975-76 (May 10, 2016) (deeming all products meeting the definition of "tobacco product" at 21 U.S.C. § 321(rr), except accessories of such newly deemed products, to be subject to such subchapter).

11.     ENDS products generally meet the definition of "tobacco product" at 21 U.S.C. § 321(rr) and include: "devices, components, and/or parts that deliver aerosolized e-liquid when inhaled." FDA, *Guidance for Industry: Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization (Revised)\** (Apr. 2020), at 9–10, https://go.usa.gov/xuvn5. E-liquids "are a type of ENDS product and generally refer to liquid nicotine and nicotine-containing e-liquids (i.e., liquid nicotine combined with colorings, flavorings, and/or other ingredients)." *Id.* Defendants' ENDS products are made or derived from tobacco, or contain nicotine from any source, and are

3

intended for human consumption, and thus are "tobacco product[s]" within the meaning of 21 U.S.C. § 321(rr).

### *Defendants' ENDS Products Are New Tobacco Products*

12. The Act defines "new tobacco product" at 21 U.S.C. § 387j(a)(1) to include "any tobacco product . . . that was not commercially marketed in the United States as of February 15, 2007."

13. Defendants' ENDS products were not commercially marketed in the United States as of February 15, 2007, and thus are "new tobacco product[s]" within the meaning of 21 U.S.C. § 387j(a)(1).

### *Pathways to Market for New Tobacco Products*

14. A new tobacco product may receive FDA marketing authorization through any one of three pathways: (1) the premarket tobacco product application ("PMTA") pathway under 21 U.S.C. § 387j(a)(2)(A) and (b), through which FDA reviews a PMTA and issues a marketing granted order (MGO) permitting marketing of the new tobacco product under 21 U.S.C. § 387j(c)(1)(A)(i) upon a finding that the product is appropriate for the protection of the public health; (2) the substantial equivalence (SE) pathway under 21 U.S.C. § 387j(a)(2)(A)(i), through which FDA reviews a report submitted under 21 U.S.C. § 387e(j) (the "SE report") for the product and issues an order (the "SE order") determining, among other things, that it is substantially equivalent to a tobacco product commercially marketed in the U.S. as of February 15, 2007, or a tobacco product marketed after that date, but which FDA previously determined to be substantially equivalent; or (3) the SE exemption pathway under 21 U.S.C. § 387j(a)(2)(A)(ii), through which FDA reviews an exemption request submitted under 21 C.F.R.

§ 1107.1 and a report submitted under 21 U.S.C. § 387e(j)(1) (the "abbreviated report") for the product, and issues a "found-exempt" order pursuant to 21 U.S.C. § 387e(j)(3)(A).

15.  A new tobacco product is required by 21 U.S.C. § 387j(a) to have premarket review unless it has an SE order or found-exempt order in effect.  21 U.S.C. § 387j(a)(2)(A).  A new tobacco product that is required by 21 U.S.C. § 387j(a) to have premarket review and does not have an MGO in effect under 21 U.S.C. § 387j(c)(1)(A)(i) is adulterated under 21 U.S.C. § 387b(6)(A).

16.  A new tobacco product for which a "notice or other information respecting it was not provided as required" under the SE or SE exemption pathway, including an SE report or an abbreviated report, is misbranded under 21 U.S.C. § 387c(a)(6).

*Defendants' ENDS Products Have Not Been Authorized by FDA and Are Both Adulterated and Misbranded*

17.  Defendants' ENDS products, as "new tobacco product[s]" within the meaning of 21 U.S.C. § 387j(a)(1), are required by 21 U.S.C. § 387j(a)(2) to have premarket review because they do not have an SE order or found-exempt order in effect.  Defendants' ENDS products do not have an MGO in effect under 21 U.S.C. § 387j(c)(1)(A)(i).  Defendants submitted a PMTA for some e-liquid products on September 9, 2020.  However, FDA denied the PMTA in Marketing Denial Orders ("MDOs") issued on September 10, 2021, and October 5, 2021.  Defendants have not submitted a new PMTA.  Accordingly, Defendants' ENDS products are adulterated under 21 U.S.C. § 387b(6)(A).

18.  In addition, neither an SE report nor an abbreviated report has been submitted for any of Defendants' ENDS products.  Accordingly, Defendants' ENDS products are misbranded under 21 U.S.C. § 387c(a)(6).

**Defendants Engage in Interstate Commerce**

19.     Defendants sell their ENDS products through their website and ship their products to customers outside of the state of Colorado.

**Defendants' History of Violative Conduct**

20.     Defendants are aware that their practices violate the Act.  FDA has repeatedly warned Defendants about their violative conduct and explained that continued violations could lead to enforcement action, including an injunction.

21.     In July 2022, FDA reviewed Defendants' website and observed that the firm was offering for sale e-liquid products that lacked an effective FDA marketing authorization order. On August 1, 2022, FDA issued a Warning Letter to Defendants, notifying them that Boosted LLC was violating the Act by selling new tobacco products that are adulterated under 21 U.S.C. § 387b(6)(A) and misbranded under 21 U.S.C. § 387c(a)(6), because they lack the required marketing authorization order.  The Warning Letter specifically referenced Defendants' Dragon Fruit Coconut Milkshake, Horchata Milkshake, and Raspberry Milkshake e-liquid products, and stated that Defendants "should address any violations…. that are the same as or similar to those stated above, and promptly take any necessary actions to bring your tobacco products into compliance with the FD&C Act."

22.     After receiving no response to the Warning Letter, FDA followed up with Defendants twice in writing.  FDA sent a follow-up letter on February 17, 2023, and requested a response within seven business days.

23.     FDA followed up with Defendants via letter again on September 14, 2023, and requested a response within seven business days.

24.     FDA sent the two response letters via mail and e-mail. FDA never received a response from Defendants.

25.     On November 29, 2023, FDA conducted an undercover purchase of Defendants' Boosted Breakfast and Horchata Milkshake e-liquid products through Defendants' website. The purchased ENDS products were shipped from "Boosted, 455 W Wesley Avenue, Denver, CO 80223," to the undercover purchaser in Maryland.

### Request for Relief

26.     Despite prior notifications, Defendants have not brought themselves in compliance with the Act. Unless restrained by this Court, Defendants will continue to violate the Act in the manner set forth above.

WHEREFORE, Plaintiff respectfully requests that the Court:

I.     Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them from violating 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce tobacco products that are adulterated or misbranded.

II.     Order that FDA be authorized pursuant to this injunction to inspect Defendants' places of business and website(s), and all records relating to the manufacture, sale, and distribution of Defendants' tobacco products, to ensure continuing compliance with the terms of

the injunction, with the costs of such inspections to be borne by Defendants at the rates prevailing at the time the inspections are accomplished; and

    III.    Award Plaintiff its costs incurred in pursuing this action, including the costs of investigation to date, and such other equitable relief as the Court deems just and proper.

Dated: June 6, 2024

                              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director
Consumer Protection Branch

By:    /s/Michael J. Murali
*Michael J. Murali*
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 5th Street, N.W.
6th Floor South
Washington, D.C. 20530
(202) 514-0324
michael.murali@usdoj.gov
Attorney for Plaintiff
United States of America

OF COUNSEL:

MARK RAZA
Chief Counsel
United States Food and
Drug Administration

SHANNON SINGLETON
Deputy Chief Counsel for Litigation

SARAH ROSENBERG
Assistant Chief Counsel
United States Department of
Health and Human Services
Office of the General Counsel
Food and Drug Division
10903 New Hampshire Avenue
Silver Spring, MD 20993

9